**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**RICETEC, INC.**
                                                                      **PLAINTIFF /**
                                                              **COUNTER DEFENDANT**


**v.**                                    **Case No. 2:20-cv-00056-LPR**


**CLINT COOK individually and**                                **DEFENDANT /**
**d/b/a CLINT COOK FARMS**                             **COUNTER CLAIMANT**

<u>**ORDER**</u>

Before the Court are Ricetec's Motion to Realign Parties[1] and Clint Cook's Objection to

Removal, which the Court construes as a Motion to Remand.[2]  For the reasons stated below, the

Court grants the Motion to Remand and denies the Motion to Realign as moot.


BACKGROUND

The facts and procedural history of this case are somewhat convoluted.  The Court presents

the most straight-forward summary it can muster.


A.  <u>The 2017 Lawsuit Filed by Ricetec Against Mr. Cook</u>

On June 1, 2017, Ricetec, represented by the Wilson Law Group, filed suit against Mr.

Cook in Lee County Circuit Court for approximately $60,000.[3]  The 2017 Complaint alleged that

---

[1]    Ricetec's Mot. to Realign Parties (Doc. 6).

[2]    Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11).

[3]    Clint Cook's 2019 Compl. (Doc. 2) ¶ 4.  As discussed in more detail below, although the document is titled
    "Counterclaim and Cross Claim," it is really a case-initiating Complaint.  The Court will thus refer to this
    document as Clint Cook's 2019 Complaint, Mr. Cook's 2019 Complaint, or the 2019 Complaint.  Further, for
    clarity's sake, the Court will refer to Ricetec as a defendant, Mr. Cook as a plaintiff, and Mr. Robert Wilson III,
    Mr. Paul Hickey, and the Wilson law firm as non-diverse defendants.

Mr. Cook "has an account with RiceTec, Inc., and is indebted to [Ricetec]" for certain goods.[4]  The 2017 Complaint further alleges that Mr. Cook's account was "past due and . . . unpaid despite demand."[5]  Ricetec, through its lawyers, apparently attempted personal service of the 2017 Complaint by having the Sheriff of Lee County serve Mr. Cook at 19897 Hwy 79 West, Moro, Arkansas 72368.  However, the Sheriff was unable to execute service because "the residence at 19897 [was] completely burned."[6]  The unexecuted service was filed with the Circuit Court on June 14, 2017.[7]

Here is where the plot starts to thicken.  Arkansas law "authorizes service by warning order if it appears from the affidavit of a party or his or her attorney that, 'after diligent inquiry, the identity or whereabouts of a defendant remains unknown.'"[8]  But to justify the authorization of service by warning, the affidavit at issue must provide more than just a conclusory statement that a diligent inquiry has been made.[9]  The affidavit needs to set forth specific facts that show that the moving party actually attempted to locate a defendant.[10]  This was the clear state of the law when Ricetec filed and attempted to serve its 2017 Complaint.

On July 12, 2017, Robert Wilson III, an attorney with the Wilson Law Group, signed an Affidavit for Publication of Warning Order.[11]  Mr. Wilson's affidavit was extremely brief.  It stated that he "made [a] diligent inquiry in an effort to locate the . . . Defendants, Clint Cook individually

---

4    Ex. A (Ricetec's Compl.) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 9.

5    *Id.*

6    Ex. A (Unexecuted Return of Service) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 16.

7    *Id.*

8    *Self v. Hustead*, 2017 Ark. App. 339, at 5, 525 S.W.3d 33, 36 (citing ARK. R. CIV. P. 4(f)(1)).

9    *Id.* at 5-7, 532 S.W.3d at 36-38 (collecting cases).

10    *Id.*

11    Ex. B (Aff. for Publication Warning Order) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 19-20.

and dba Clint Cook Farms, and from the information obtained, the whereabouts of the Defendants are unknown."[12]  It stated that the last known address for Clint Cook individually and dba Clint Cook Farms was the 19897 Hwy 79 address.[13]  And it stated that the affidavit was "made to the end that a Warning Order may be issued and published against" Clint Cook individually and dba Clint Cook Farms.  Based on this affidavit, the Circuit Clerk for Lee County issued a Warning Order.[14]  Ricetec's lawyers at the Wilson Firm caused the Warning Order to be published twice in the Arkansas Democrat-Gazette.[15]  Clint Cook individually and dba Clint Cook Farms did not file an Answer.  So, on September 5, 2017, Ricetec moved for a default judgment against Clint Cook individually and dba Clint Cook Farms.[16]  On September 15, 2017, the Court entered the default judgment for $60,080.20, $2,038.15 for prejudgment interest, and $761.40 for costs and attorneys' fees.[17]  The default judgment Order called for post-judgment interest "at the rate of 5% per annum from [the] date of entry until paid in full . . . ."[18]  The Order also said that "garnishment or execution may issue after the passage of 10 days from entry of this judgment" and that Ricetec could recover the costs it expended in doing so.[19]  Ricetec's lawyers at the Wilson Law Group caused a writ of garnishment to be issued as to, and served on, Merchant and Planters Bank.[20]  Clint Cook had a

---

[12]  *Id.* at 19.

[13]  *Id.*

[14]  Ex. C (Warning Order) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 22.

[15]  Ex. C (Arkansas Democrat-Gazette Statement of Legal Advertising) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 25.

[16]  Ex. D (Motion for Default Judgment) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 28-29.

[17]  Ex. D (Default Judgment) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 31-32.

[18]  *Id.* at 32.

[19]  *Id.*

[20]  Ex. E (Answer of Garnishee) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 35-36; Clint Cook's 2019 Compl. (Doc. 2) ¶ 11.

deposit account with Merchant and Planters Bank.[21]  The account had $1,320.09 in it at the time, which was frozen because of the garnishment.[22]

It is not entirely clear exactly how or when Mr. Cook first learned about all of this.  Perhaps it was when his funds were frozen (late November 2017).  Perhaps it was a few weeks earlier, as Mr. Cook makes a passing reference to Mr. Cook being sent (successfully) the Default Judgment by Ricetec's lawyers after it had been entered.[23]  In any event, on November 28, 2017, Mr. Cook filed a Motion to Set Aside a Default Judgment and Writ of Garnishment.[24]  Then, on December 1, 2017, Mr. Cook filed a Motion to Dismiss Ricetec's Complaint.[25]  Both Motions were based on the argument that Ricetec had not properly served Mr. Cook because the Affidavit for Publication Warning Order was deficient and, consequently, the issuance of the Warning Order was improper and ineffective.  In addition to these Motions, Mr. Cook also filed a Counterclaim against Ricetec on December 1, 2017, alleging two intentional torts: abuse of process and conversion.[26]  With respect to abuse of process, Mr. Cook alleged:

> Plaintiff has engaged in abuse of process by not properly attempting personal service, by not even trying to effect service of process by certified mail, return receipt requested with delivery restricted but most egregiously, by filing a known defective conclusory Affidavit for the Publication of Warning Order.  Plaintiff's Affidavit, issued after multiple opinions had been handed down by the Arkansas Supreme Court and Arkansas Court of Appeals stating that conclusory affidavits are not allowed, knowingly issued just such an Affidavit with willful and wanton disregard for the law—law that sets forth Constitutional mandates for service of process by Warning

---

[21]  Ex. E (Answer of Garnishee) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 35.

[22]  Clint Cook's 2019 Compl. (Doc. 2) ¶ 11; *see also* Ex. E (Answer of Garnishee) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 35.

[23]  Ex. F (Letter from Attorney Carruth to Circuit Judge Wilson) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 38.

[24]  Ex. F (Mot. to Set Aside) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 39-41.

[25]  Ex. G (Mot. to Dismiss) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 43-44.

[26]  Ex. H (Clint Cook's 2017 Counterclaim) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 49.

Order.  Plaintiff's choice to proceed with service of process by Warning Order meant that Plaintiff had to comply with the law.  Instead of filing an Affidavit setting out the facts of its "diligent inquiry"—steps that had been explained in detail by the Arkansas appellate courts in no less than 4 cases by the time Plaintiff filed its Affidavit—Plaintiff filed a conclusory Affidavit knowing the same would result in the issuance of a Warning Order.  Plaintiff then went further and instead of publishing the Warning Order in a local paper, published it in a Little Rock paper in small print buried in the back of the paper where nobody would see it and inform the Defendant.

As further proof of Plaintiff's intent to abuse process in order to obtain its judgement and power over the defendant, Plaintiff sent its Motion for Default Judgment to an address Plaintiff had stated under oath it knew Defendant could not be found at.  With full knowledge that Defendant would never see the Motion for Default Judgement, Plaintiff mailed the Motion to a place it knew Defendant could not be found.  10 days after filing this Motion for Default, without Notice to the Defendant and without a hearing, Plaintiff, having grossly and maliciously abused the process, obtained state sanctioned power over the Defendant and his resources in the form of a Default Judgement.[27]

And with respect to conversion, Mr. Cook alleged that Ricetec caused the bank to freeze Mr. Cook's money, even though Ricetec knew that the default judgment and writ of garnishment were improperly obtained by way of a defective Affidavit for Publication Warning Order and thus defective Warning Order.[28]

On March 16, 2018, the Circuit Court granted Mr. Cook's Motion to Dismiss Ricetec's 2017 Complaint.[29]  In doing so, the Court held that "the Affidavit for Warning Order is defective and, therefore, the Warning Order should not have been issued or published.  The Warning Order procured by a defective Affidavit does not comply with due process and any attempt at service by

---

[27]  *Id.* at 53-54 (cleaned up).

[28]  *Id.* at 54-55.

[29]  Ex. B (Order Granting Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 68-70.

such Warning Order is null and void and of no effect."[30]  Accordingly, because proper service had

not been accomplished within 120 days after filing the 2017 Complaint, the Complaint was

dismissed.[31]  The dismissal of the 2017 Complaint vitiated the default judgment and garnishment.

That meant that the only thing left to address in the entire case was Mr. Cook's Counterclaim.  And

the parties agree that, in late 2018, Mr. Cook moved for—and the Court granted—a voluntary non-

suit of his entire Counterclaim.[32]  The voluntary non-suit of the Counterclaim ended the entirety

of 2017 case.

### B.   The 2019 Lawsuit Filed by Mr. Cook Against Ricetec and Its Lawyers

On October 16, 2019, Mr. Cook filed a document in the Circuit Court for Lee County titled

"Counterclaim and Cross Claim For Abuse of Process, Conversion and Negligence" against

Ricetec and its 2017 attorneys Robert Wilson III, Paul Hickey, and the Wilson Law Group.[33]

Despite the title of the document, it is clearly a case-initiating Complaint.  The 2017 case had been

closed by late 2018, as discussed above.  This October 2019 document started a new case.  As Mr.

Cook acknowledges in his Motion to Remand, the 2017 case was numbered as Case No. 39CV-

2017-72.[34]  All the filings in the 2017 case bear this case identification number, although

sometimes the year 2017 is reduced to "17" for short.  On the other hand, the 2019 document at

issue here is the opening document in a new case docket: 39CV-2019-95-4, or 39CV-19-95-4 for

---

[30]   *Id.* at 69.

[31]   *Id.*

[32]   Ricetec's Motion to Realign Parties (Doc. 6) ¶ 4; Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) ¶ 11.

[33]   Clint Cook's 2019 Compl. (Doc. 2) at 1.

[34]   Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) ¶ 1.

short.[35]  For consistency and clarity, the Court will refer to this document as Mr. Cook's 2019 Complaint.

Mr. Cook's 2019 Complaint is very similar to the Counterclaim he filed and then non-suited in the 2017 case.  The substance of the abuse of process and conversion claims are unchanged, aside from adding references to Ricetec's 2017 lawyers and their law firm where the prior iteration of the claims referred to Ricetec only.  The new claim for negligence is pled "in the alternative, if it is found that [Defendants] did not engage in abuse of process . . . ."[36]  Mr. Cook alleges Ricetec was negligent in hiring a law firm that did not understand the law on service by warning order.[37]  Mr. Cook alleges the 2017 lawyers and law firm were negligent for drafting a defective affidavit for a warning order, prosecuting the collection without following the proper legal procedures, and continuing to prosecute the collection action even after being made aware of the defective nature of the collection.[38]

On November 26, 2019, Robert Wilson, III and the Wilson Law Group filed a Motion to Dismiss.[39]  In the Motion, Mr. Wilson and the Wilson Law Group argued that "[u]nder Arkansas law, attorneys and their firms are generally not liable to third parties with whom they have no privity of contract for any 'civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed.'"[40]  Although the attorneys conceded that Arkansas's statutory bar against attorney liability to third parties "provides limited exceptions

---

[35]   *Id.* ¶ 11.

[36]   Clint Cook's 2019 Compl. (Doc. 2) ¶ 15.

[37]   *Id.*

[38]   *Id.* at ¶¶ 15-16.

[39]   Ex. A (Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 34.  This Motion did not request dismissal of Paul Hickey individually.  *See id.*; Ex. N (Mot. to Set Aside Order) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 101-02.

[40]   Ex. A (Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 34 (quoting ARK. CODE ANN. § 16-22-310(a)).

for conduct constituting fraud or intentional misrepresentation," they argued that Mr. Cook did "not and cannot allege any conduct by Wilson that would warrant the application of any [of] the exceptions to the broad statutory immunity provided to Arkansas attorneys."[41]

On December 23, 2019, Mr. Cook responded to the Motion to Dismiss.[42]  In the Response, Mr. Cook asserted that "[t]he facts pled clearly establish an intentional tort on the part of the Movant such that any immunity offered by A.C.A. § 16-22-310(a) is specifically exempted from the operation of that statute by A.C.A. § 16-22-310(a)(1)."[43]  In support of this contention, Mr. Cook relied heavily on a case from the United States District Court for the Western District of Arkansas that concluded that A.C.A. § 16-22-310(a) "was not meant to extend immunity from civil damages to intentional acts such as abuse of process or conversion."[44]

On December 28, 2019, the Lee County Circuit Court signed an Order dismissing the claims against the Arkansas attorneys.[45]  That Order was not filed until February 19, 2020.[46]  The Order stated "[t]his Court, being well and sufficiently advised of all relevant matters herein, and Plaintiff Clint Cook . . . having not responded to the motion, does hereby dismiss the claims against

---

[41]   Ex. A (Br. in Supp. of Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 39.

[42]   Ex. M (Resp. to Mot. to Dismiss) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 95-97.  The Response may have been untimely, but that is not entirely clear from the Record.  The certificate of service for the Arkansas attorneys' Motion to Dismiss stated that it "was served via first class U.S. Mail" on November 25, 2019.  Ex. A (Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 36.  The certificate of service for Mr. Cook's Response stated that it was served on December 18, 2019.  Ex. M (Resp. to Mot. to Dismiss) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 97.  In Arkansas, the deadline to serve a response to a motion is ten days after service.  ARK. R. CIV. P. 6(c).

[43]   Ex. M (Resp. to Mot. to Dismiss) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 96 (cleaned up).

[44]   *Almand v. Benton Cty., Ark.*, 145 B.R. 608, 617 (W.D. Ark. 1992).

[45]   Order (Doc. 4).  On January 3, 2020, the Arkansas attorneys filed a Reply to Mr. Cook's Response to the Motion to Dismiss.  Ex. (Reply to Resp. to Mot. to Dismiss) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 122-126.  It appears that the Arkansas attorneys were unaware that the state court had already signed (but not yet filed) the Order dismissing the claims against them.

[46]   Order (Doc. 4).

Robert Wilson III, Paul Hickey, and the Wilson Law Group . . . with prejudice."[47]  Mr. Cook asserts that the Dismissal Order was clearly erroneous because the court appeared to have missed that Mr. Cook had filed a Response to the Motion to Dismiss, and because the claims against Mr. Hickey were dismissed even though Mr. Hickey did not join the Motion to Dismiss.[48]  Nonetheless, at this time, the dismissal stands.[49]

Ricetec says that it first received notice of the Court's Order dismissing the attorney defendants and law firm on February 21, 2020.[50]  Mr. Cook does not controvert this statement. After dismissal of the Arkansas attorneys, "the only parties remaining in the case—Cook and Ricetec—were citizens of different states."[51]  Ricetec believes this entitled them to remove the case.  Mr. Cook does not agree.  Ricetec filed a Petition for Removal with this Court on March 17, 2020, which was within thirty days of the date Ricetec received notice of the dismissal of the non-diverse Defendants.[52]

---

[47] *Id.*

[48] *See infra* note 49.

[49] On March 26, 2020, about nine days after the case was removed to federal court, Mr. Cook filed a Motion in state court to set aside the dismissal Order against Ricetec's attorneys. Ex. N (Mot. to Set Aside Order) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 99-103.  Because the case has been removed to federal court, the state court has no jurisdiction to act on that motion.  *See, e.g., Iowa Cent. Ry. Co. v. Bacon*, 236 U.S. 305, 310 (1915) (stating that when a state case is removed to federal court, "the state court loses jurisdiction to proceed further, and all subsequent proceedings therein are void").  Indeed, on August 3, 2020, the Lee County Circuit Court entered an Order staying proceedings without having ruled on Mr. Cook's Motion to set aside the Order dismissing the Arkansas attorneys.  *Ricetec v. Clint Cook Farms*, 39CV-19-95 (Lee Cty. Cir. Ct., August 3, 2020). In any event, the Motion to set aside the dismissal Order stated that "[i]t is Cook's belief that Robert Wilson, III, The Wilson Law Group and/or H. Keith Morrison with the Wilson Law Group prepared and submitted the precedent signed by [the Lee County Circuit] Court on December 28, 2019 and filed of record on February 19, 2020, 47 days after Wilson had filed its Reply to Cook's Response to the Motion to Dismiss."  Ex. N (Mot. to Set Aside Order) to Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) at 101.  The Motion further argued that "[c]learly, a misrepresentation was made to the Court that Cook had not responded when, in fact, Cook had responded on December 23, 2019."  *Id.*  It also noted that the Order "dismisses Paul Hickey as a party," even though "Paul Hickey is conspicuously absent" from the Motion to Dismiss and "[n]o pleading had been filed seeking Paul Hickey's dismissal."  *Id.* at 100-02.

[50] Ex. D (Decl. of Timothy J. Wolf) to Ricetec Petition for Removal (Doc. 1) at 75.

[51] Ricetec's Mot. to Realign (Doc. 6) ¶ 8.

[52] Ricetec's Pet. for Removal (Doc. 1).

In the Removal Petition, Ricetec argues that removal is proper because Mr. Cook "fraudulently joined the non-diverse defendants to this action . . . ."[53]  Noting that "[f]raudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal,"[54] Ricetec asserts that "there was no basis in fact or law to proceed with claims against the Attorney Defendants," and that Mr. Cook "joined Ricetec's attorneys in the underlying garnishment action as a way to defeat diversity jurisdiction."[55]  Ricetec argues that it was clear at the outset of this case that the 2017 lawyers and law firm were immune (pursuant to A.C.A. § 16-22-310) from the claims brought by Mr. Cook.  According to Ricetec, it was obvious that the "fraud or intentional misrepresentations" exception to attorney immunity did not apply to Mr. Cook's claims against the Arkansas attorneys because Mr. Cook "*did not plead* a fraud or intentional misrepresentation claim against the Attorney Defendants."[56]  Among other things, Ricetec pointed to the state court's *with prejudice* dismissal of the lawyers and law firm as strong evidence that the claims against the non-diverse attorneys constituted fraudulent joinder.[57]

On April 16, 2020, Mr. Cook filed the instant Objection to Removal and Motion to Remand.[58]  Mr. Cook argues that the case should be remanded for four separate reasons.  First, Mr. Cook asserts that Ricetec's removal was untimely, having occurred more than thirty days after Ricetec was served with the 2019 Complaint.[59]  Second, Mr. Cook says that Ricetec "chose Lee County, Arkansas in its lawsuit against him wherein RiceTec, Inc. attempted to collect a debt,"

---

[53]  *Id.* ¶ 2.

[54]  *Id.* ¶ 17 (quoting *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613,620 (8th Cir. 2010)).

[55]  *Id.* at ¶¶ 27-28.

[56]  *Id.* ¶ 6.

[57]  *Id.* ¶ 7.

[58]  Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11).

[59]  *Id.* ¶ 14.

and that "[b]y seeking removal, RiceTec, Inc. is engaging in the most egregious form of 'forum shopping' now that it finds itself as a defendant with facts not favorable to them before a Lee County, Arkansas jury."[60]  Third, Mr. Cook argues the state court's dismissal of the non-diverse Arkansas attorneys was in error.[61]  As part of this argument, Mr. Cook incorporates by reference his two-page Response to the Motion to Dismiss that he filed in state court.[62]  Finally, Mr. Cook argues that Ricetec "has sufficient minimum contacts with the state of Arkansas such that diversity of citizenship does not exist" because Ricetec "conducts extensive business" in the state, such as "research, sales and other corporate functions."[63]

On April 30, 2020, Ricetec filed a Response to Mr. Cook's Objection to Removal and Motion to Remand.[64]  Ricetec again argues that Mr. Cook "fraudulently joined claims against the non-diverse attorney defendants," and notes that Mr. Cook "does not cite to any legal authority opposing Ricetec's arguments in this regard."[65]  Ricetec states that fraudulent joinder "is actually the crux of the [timeliness] issue because an exception to the 'time-of-filing' rule is the fraudulent joinder exception," and thus Ricetec could file "its Petition for removal within 30 days of receiving notice of the dismissal" of the fraudulently-joined defendants.[66]  Ricetec further asserts that there is "no evidence" that it engaged in forum shopping, and that the minimum contacts argument "has

---

[60]  *Id.* ¶ 15(A).  The Court assumes that Mr. Cook is arguing that the choice of a state forum in the 2017 case by Ricetec in some way precludes Ricetec from removing the 2019 case to a federal forum.

[61]  *Id.* ¶ 15(B).

[62]  *Id.* ¶15(B)(ii).

[63]  *Id.* ¶ 16.

[64]  Ricetec's Resp. to Obj. to Removal and Mot. to Remand (Doc. 12).

[65]  *Id.* at 1.

[66]  *Id.* at 3.

nothing to do with whether the case was removable based on the existence of federal diversity jurisdiction."[67]

## LEGAL DISCUSSION

The crux of this case (at least for purposes of the removal question) is about the fraudulent joinder rule.  The fraudulent joinder rule provides that "a plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'"[68]  The Eighth Circuit defines fraudulent joinder as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal . . . ."[69]  To show fraudulent joinder, a defendant seeking removal must "prove that the plaintiff's claim against the diversity-destroying defendant has 'no reasonable basis in fact and law.'"[70]  "[J]oinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'"[71]

Ricetec's fraudulent joinder argument goes something like this.  Everyone agrees that Plaintiff was not in privity with Ricetec's 2017 lawyers and law firm.  Accordingly, by virtue of an unambiguously worded Arkansas statute, Ricetec's lawyers and law firm were and are clearly

---

[67]  *Id.* at 1-2.

[68]  *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (quoting *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152, (1914)).

[69]  *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003).

[70]  *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 810).

[71]  *Id.* (quoting *Filla*, 336 F.3d at 811).  Below I use phrases such as "fraudulent joinder," "fraudulently joined," and "the fraudulent nature of the joinder" interchangeably.  In using those phrases, I refer to the objective test that asks whether a claim or claims against non-diverse defendants have a reasonable basis in law and fact.  If there is a reasonable basis in law and fact, the inquiry ends and the joinder is not fraudulent.  If there is not a reasonable basis in law and fact, then it is assumed by operation of law that the sole reason for the claim or claims against non-diverse defendants is to destroy diversity.  So the joinder is fraudulent.  The bottom line here is that the test is an objective one, and does not involve any determination about the subjective intent of the party (or counsel of the party) making claims against non-diverse defendants.  The "fraudulent" descriptor is something of a misnomer, but it is the term that permeates controlling precedent.

immune from Plaintiff's suit "for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for . . . [a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations."[72]  The exception for "acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations" is a description of one particular intentional tort claim in Arkansas law—the intentional tort of fraud, deceit, or misrepresentation.[73]  Ricetec argues that Plaintiff "*did not plead* a fraud or intentional misrepresentation claim against the [non-diverse] Attorney Defendants," so there was no reasonable basis in law and fact for the joinder of these defendants.[74]  Ricetec's fraudulent joinder argument is a purely legal one based solely on Mr. Cook's 2019 Complaint.  And Ricetec's argument that removal was timely and appropriate is, in turn, primarily based on its argument that there was fraudulent joinder.[75]

28 U.S.C. § 1441 provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Absent Ricetec's ability to show fraudulent joinder of the non-diverse defendants (meaning the lawyer defendants and the law firm defendant), removal would be improper.  This is because the federal court would not have had diversity

---

[72]   ARK. CODE ANN. § 16-22-310(a)(1).

[73]   *See Calandro v. Parkerson*, 327 Ark. 131, 137-38, 936 S.W.2d 755, 759 (1997).

[74]   Ricetec's Pet. for Removal (Doc. 1) ¶ 6.  *See also* Ricetec's Resp. to Obj. to Removal and Mot. to Remand (Doc. 12) at 1, 3.

[75]   At the hearing on this Motion, Ricetec also argued that, regardless of whether the joinder of non-diverse defendants was fraudulent, the plain text of the removal statute allowed Ricetec to remove the case within thirty days of receiving notice of the state court's dismissal of the non-diverse defendants.  That argument runs headlong into the voluntary-involuntary dismissal rule—a rule adopted by the Eighth Circuit.  *See infra* note 79.  There is a non-frivolous argument that the voluntary-involuntary rule does not apply in cases where the dismissed parties had been fraudulently joined.  *See infra* note 92.  But there is no argument that the voluntary-involuntary rule is otherwise inapplicable.

jurisdiction over the case at the time it was filed.[76]  But let us assume for a moment that Ricetec is correct when it argues that the non-diverse defendants were fraudulently joined.  Even in that situation, Ricetec faces an insurmountable hurdle.

That hurdle is the timing of its removal petition.  28 U.S.C. § 1446(b)(1) requires a defendant or defendants to file

> [t]he notice of removal of a civil action . . . within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . , or within 30 days after the service of summons upon the defendant if [the] initial pleading has then been filed in court and is not required to be served on the defendant, whichever is earlier.

To put it plainly, there is generally a thirty-day window after the defendant gets the complaint for removal to be filed.  If the removal petition is filed after the expiration of this thirty-day window, and if a timely remand motion identifies the lateness of the removal petition, a federal court must remand the case to the state court.[77]

There is an exception to this thirty-day window requirement.  28 U.S.C. § 1446(b)(3) provides, in relevant part, that

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.[78]

---

[76]  *See Knudson*, 634 F.3d at 975 ("In the case of a removed action, diversity of citizenship must exist both when the state petition is filed and when the petition for removal is filed.") (internal brackets omitted) (quoting *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001)).  There is no federal question in this case.  No party suggests that the Court has federal question jurisdiction here.

[77]  *See Davis Neurology PA v. DoctorDirectory.com LLC*, 896 F.3d 872, 873 (8th Cir. 2018) ("We conclude that the removal was untimely, and that the district court thus lacked jurisdiction to rule on the merits, so we vacate the judgment on the pleadings and remand with directions to return the case to state court.").

[78]  The exceptions to 28 U.S.C. § 1446(b)(3) set forth in 28 U.S.C. § 1446(c) are not relevant here.

Ricetec is relying on the § 1446(b)(3) exception in arguing that its removal was timely.  To summarize, Ricetec says its removal was timely because (1) the non-diverse defendants in this case were fraudulently joined, and (2) Ricetec filed its removal petition within thirty days after receiving notice of the state court's dismissal of the fraudulently joined non-diverse defendants.[79]

The problem with Ricetec's position is that the § 1446(b)(3) exception does not apply in the circumstances of this case.  The exception only applies where "the case stated by the initial pleading is not removable . . . ."  What was the ordinary meaning of the word "removable" when Congress passed (and the President signed) this provision?  The Court concludes that the ordinary meaning of "removable" was (and still is today) that a case could be successfully removed to federal court and the case's removability could be ascertained by the diverse defendant.[80]  Conversely, a "case stated by the initial pleading is not removable" where either the case could not

---

[79]   Ricetec's Pet. for Removal (Doc. 1) ¶¶ 26-29.  There is no question that, in the absence of fraudulent joinder, the state court dismissal would not renew the thirty-day clock for removing a case.  That is because the state court dismissal was "involuntary," meaning Plaintiff did not agree to dismiss the non-diverse defendants.  *See In re Iowa Mfg. Co. of Cedar Rapids, Iowa*, 747 F.2d 462, 463 (8th Cir. 1984) ("The [voluntary-involuntary] rule establishes a bright line test for evaluating removability.  If the dismissal of a defendant in state court creates complete diversity between all parties so that the case may be removed to federal court, the propriety of removal is determined according to whether the dismissal was voluntary or involuntary with respect to the plaintiff.  In other words, if the plaintiff voluntarily dismisses the non-diverse defendant, the case may be removed.  Removal is improper, however, if the dismissal of that resident defendant was involuntary.").  As a district court judge, it is not my role to question whether this rule is correct as a matter of textual interpretation.  Rather, my role is limited to applying this clear and binding precedent.  In our case, the state court dismissal of the non-diverse defendants was obviously not a voluntary one; Plaintiff initially contested dismissal and has a motion to set aside the dismissal pending in state court (stayed because of removal).

[80]   *See* "Removal," *Black's Law Dictionary* (7th ed. 1999) (defining removal as "[t]he transfer of an action from state to federal court" and noting that "[i]n removing a case to federal court, a litigant must timely file the removal papers and must show a valid basis for federal-court jurisdiction").  There is nothing to suggest the definition of removal has changed from the time Congress passed the provision to now.  As to the requirement that removability can be ascertained, that flows from the relation between the first phrase of the statutory exception and the remaining portion of the statutory exception, which discusses when "it may first be ascertained that the case is one which is or has become removable."  Words do not have meaning in a vacuum; they must be read and defined as part of the overall language of the statutory provision.  *See United States v. Smith*, 460 F. Supp. 3d 783, 795 (E.D. Ark. 2020); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 70 (2012).

be successfully removed to federal court or where its removability could not be ascertained at that time.

There is no question that a case can be removed right from the start if the only theoretical barrier to diversity jurisdiction is the fraudulently joined non-diverse defendants.  Indeed, in many of the cases that Ricetec relies on in its Petition for Removal and its Opposition to the Remand Motion, the diverse defendant immediately and successfully removed the case from state court despite the fraudulent joinder of non-diverse defendants.[81]  The diverse defendants in those cases did not wait to remove the case until a motion to dismiss or a motion for summary judgment by the non-diverse defendants was resolved.  The removability of those cases was not dependent on first knocking out the non-diverse defendants in state court.  That is not surprising.  As several other judges in this Circuit have put it, "[u]nder the doctrine of fraudulent joinder, a federal court can ignore the citizenship of a non-diverse defendant for the purpose of assessing jurisdiction if 'there exists no reasonable basis in fact and law supporting' the plaintiff's claim against that defendant."[82]  That means that original jurisdiction based on diversity exists from day one of a case if the non-diverse defendants are fraudulently joined.

There are bound to be a large number of fraudulent joinder cases where a diverse defendant could reasonably argue that the fraudulent nature of the joinder of non-diverse defendants could

---

[81]   *See Welk v. GMAC Mortg., LLC*, 720 F.3d 736 (8th Cir. 2013); *Carey v. Bd. of Governors of Kernwood Country Club*, 337 F. Supp. 2d 339 (D. Mass. 2004).

[82]   *Sinclair v. Charter Commc'ns, Inc.*, No. 4:13CV1146 CDP, 2013 WL 5707872, at *2 (E.D. Mo. Oct. 21, 2013) (quoting *Filla*, 336 F.3d at 810); *see also Smith v. Boeing Aerospace Operations, Inc.*, No. 4:14CV1200 CDP, 2014 WL 4141479, at *3 (E.D. Mo. Aug. 19, 2014) ("If the case is removable now, it was removable then.") (quoting *Tabor v. Willey*, No. C01-1002 MJM, 2001 WL 34152085, at *3 (N.D. Iowa May 3, 2001)); *Moss v. Def. Servs., Inc.*, No. 1:08-CV-88 CAS, 2009 WL 90136, at *2 (E.D. Mo. Jan. 14, 2009) ("Original jurisdiction exists in all civil actions between persons of different states where the amount in controversy exceeds $75,000. When a court is assessing whether diversity jurisdiction exists over a particular case, it may ignore the citizenship of parties fraudulently joined.  Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent.  It is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained.") (cleaned up).

not be ascertained from the initial complaint.  It would only be later, based on "an amended pleading, motion, order or other paper," that the diverse defendant could or did ascertain that the joinder of non-diverse defendants constituted fraudulent joinder.  In such cases, there's a very good argument that the thirty-day removal window is not triggered until it becomes clear that the joinder of the non-diverse defendants was fraudulent.[83]

The case at bar is different.  Ricetec's petition for removal emphasizes its view of how "clear" it was from the initial Complaint that Plaintiff's claims against the non-diverse defendants were barred by state law and thus that the non-diverse defendants were fraudulently joined.[84] Specifically, according to Ricetec, because Plaintiff did not allege claims of fraud or intentional misrepresentation in the 2019 Complaint, Arkansas state law automatically operated to bar Plaintiff's claims against the lawyers and law firm because Plaintiff was not in privity with the lawyers and law firm.  This is a purely legal argument.  There are no extra facts that Ricetec only later discovered to lead them to this conclusion.  There was no amended pleading, motion, order, or other paper that provided any additional information to Ricetec related to fraudulent joinder. There was no "aha" moment where Ricetec learned something relevant to the fraudulent joinder question that it had not known at the start of the case from the initial Complaint.  Certainly, the

---

[83] Ricetec's brief cites one such case, a 1958 case from the Western District of Arkansas.  Ricetec's Pet. for Removal (Doc. 1) ¶ 14.  In that case, the defendant that moved for removal took pains to explain to the federal court that the fraudulent nature of the joinder of a non-diverse defendant "became known to the petitioner . . . only after [the] cause was fully tried, argued by counsel, and submitted to the jury . . . ." *Stone v. Foster*, 163 F. Supp. 298, 300 (W.D. Ark. 1958).  The removing defendant explained that "this cause became removable because of the manifestation of the fraud at that time for the first time . . . ." *Id.*  That is a far cry from our case.  Ricetec's various arguments implicitly (and maybe explicitly) acknowledge that Ricetec believes it was clear from the outset of this case that the naming of Ricetec's lawyers and law firm as defendants constituted fraudulent joinder. *See* Ricetec's Pet. for Removal (Doc. 1) ¶ 26 (emphasizing Ricetec's view of how "clear" it was from the initial pleading that Plaintiff's claims against the non-diverse defendants were barred).

[84] *See* Ricetec's Pet. for Removal (Doc. 1) ¶ 26.

state court's dismissal Order did not provide new information to Ricetec regarding fraudulent joinder.[85]

Recall that, at least as relevant here, joinder is only fraudulent if there is no reasonable basis in law for the joinder. If reasonable minds could disagree as to whether there is a basis in law for the joinder, then the joinder is not fraudulent. Given that standard, if there was fraudulent joinder here, the fraudulent nature of the joinder would have been obvious to Ricetec from the time it first received the 2019 Complaint. The case was removable from the start[86] and its removability could be (and was) ascertained from the start. So the thirty-day removal window would have begun to run from service of the 2019 Complaint and the § 1446(b)(3) exception would not be applicable. Accordingly, even assuming arguendo that Ricetec is correct that the non-diverse defendants were fraudulently joined, remand would still be proper because Ricetec's removal was untimely.[87]

---

[85]  *Cf. Davis Neurology*, 896 F.3d at 875 ("These two filings in May and June provided Doctor Directory with information about Davis Neurology's alleged injury that was at least equivalent to the statement set forth in the September 2 footnote. So even if Doctor Directory was entitled to additional time for removal based on uncertainty about Davis Neurology's standing to sue, the clock started to run no later than June 23.").

[86]  Consent to removal does not need to be obtained from fraudulently joined non-diverse defendants. So there is no consent problem that would have prevented the case from being successfully removed. *Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017) ("We also agree with the district court's conclusion that because McLiney and O'Laughlin were fraudulently joined, their consent was not needed for removal.").

[87]  *Davis Neurology*, 896 F.3d at 873 ("We conclude that the removal was untimely, and that the district court thus lacked jurisdiction to rule on the merits, so we vacate the judgment on the pleadings and remand with directions to return the case to state court."); *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 970-71 (8th Cir. 2007) (holding that "the case should have been remanded to state court" because the "attempt to remove this case was untimely"). Even if the Court is incorrect about successful removal being ascertained from the start, it was certainly ascertained when a Motion to Dismiss was filed by the attorney/law firm defendants basing their dismissal argument specifically on the attorney immunity statute—the exact same argument Ricetec makes to show fraudulent joinder. That Motion was filed on November 26, 2019, far more than thirty days before removal. Ex. A (Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 34-40, Ex. A (Reply to Resp. to Mot. to Dismiss) to Ricetec's Pet. for Removal (Doc. 1) at 50-53. *See Davis Neurology*, 896 F.3d at 875. The Motion made the relevance of Arkansas's attorney immunity statute crystal clear to all parties in the case. It is the latest possible time one could say Ricetec ascertained that the non-diverse defendants were fraudulently joined and thus that the case was removable. Said another way, it is the latest possible time that the thirty-day window for removal could have started.

Ricetec's arguments to the contrary are unpersuasive. Ricetec points to 28 U.S.C. § 1441(b)(2), which states that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[88] But a defendant that is fraudulently joined cannot possibly be a party in interest that is "properly joined." The other way to say this is that the fraudulent joinder rule applies to § 1441(b)(2). The Eighth Circuit agrees.[89]

Ricetec also argues that *Knudson v. Sys. Painters, Inc.* stands for the proposition that the fraudulent joinder rule is "an exception to the 'time-of-filing' rule."[90] The "time-of-filing rule" language in *Knudson* is not referencing 28 U.S.C. § 1446(b)(1)'s thirty-day window. Rather, it is referencing a different rule—the rule that, for removal to ever be proper, a federal court must be able to say that it would have had original jurisdiction of the case at the time it was filed in state court.[91] *Knudson* is simply explaining—in line with what is basically universally acknowledged by courts across the country—that a federal court is supposed to ignore fraudulently joined non-diverse defendants in determining whether it would have had original jurisdiction of a case at the time of its filing in state court. That's not really an "exception" to the original-jurisdiction-at-time-of-filing rule. It is instead an acknowledgement of the reality that original-jurisdiction-at-time-of-filing existed despite the presence of fraudulently joined non-diverse parties. *Knudson* is of no help to Ricetec in terms of when its thirty-day window from removal began to run.[92]

---

[88] Ricetec's Pet. for Removal (Doc. 1) ¶ 16.

[89] *Couzens*, 854 F.3d at 513 ("Likewise, because the Missouri defendants were fraudulently joined, the forum-defendant-rule, 28 U.S.C. § 1441(b)(2), did not prohibit removal.").

[90] Ricetec's Pet. for Removal (Doc. 1) ¶ 17 (citing *Knudson*, 634 F.3d at 976).

[91] *Knudson*, 634 F.3d at 975-76.

[92] At the hearing, Ricetec's counsel implored the Court to review *Hoyt v. Lane*, 927 F.3d 287 (5th Cir. 2019) and its insights into *Knudson*, *Knudson's* language about "time of filing," and the overall interaction between the fraudulent joinder rule and the voluntary-involuntary dismissal rule. *Hoyt* was written by one of the finest jurists in our nation, not to mention a dear friend. But it is not controlling. And, while I admire its attempt to move the

CONCLUSION

For the foregoing reasons, Mr. Cook's Objection to Removal and Motion to Remand[93] is

GRANTED.  Ricetec's Motion to Realign Parties[94] is DENIED as moot.[95]  The Clerk of the Court

is directed to immediately transfer this case to the Circuit Court of Lee County, Arkansas.  The

Clerk is then directed to close this case.

---

judge-made doctrines that permeate this area of law back towards the plain text of the removal statutes, I don't have quite the same latitude as a circuit court judge does.  Whatever I may think of the judge-made doctrines grafted over the text of the removal statutes, I need to fully apply them unless and until the Eighth Circuit alters them.  *Hoyt* treats the fraudulent joinder rule as an exception to the voluntary-involuntary dismissal rule.  *See id.* at 295-96 & n.2.  Actually, to be precise about it, *Hoyt* says, or at least strongly implies, that the fraudulent joinder rule can be both a basis for removal itself (allowing removal *before* a state court dismisses the fraudulently joined non-diverse defendants) and an exception to the voluntary-involuntary rule (allowing removal *after* a state court dismisses the fraudulently joined non-diverse defendants).  *See id.* at 296 n.2 ("In this case at least, [fraudulent] joinder was not a ground for removal. . . . It was an exception to an exception to the ground of removal.").  But law is not quantum physics, and it doesn't seem to me that the fraudulent joinder rule can be both a wave and a particle.  It is one or the other.  My read of *Knudson* is that, at least in the Eighth Circuit, the fraudulent joinder rule is a primary rule that allows removal on its own—not an exception to the voluntary-involuntary dismissal rule.  If it were otherwise, a diverse defendant who admits to knowing full well at the outset of the case that the non-diverse defendants were fraudulently joined, and thus that the case was removable, could nonetheless sit on his removal rights for months (if not longer).  That might be the right legal outcome under the plain language of the removal statutes, but it is not the right legal outcome under the web of judge-made doctrines that are controlling on me as a district judge.

In any event, the case at bar is distinguishable from *Hoyt* in an important respect.  Ultimately, *Hoyt* concluded that the voluntary-involuntary dismissal rule did not apply to a grant of summary judgment that removed a particular non-diverse defendant from the case because the plaintiffs did not argue that they would appeal the summary judgment and win.  *See id.* at 296-97.  That is far different from the case at bar, where Plaintiff has a pending motion in state court to set aside the state court dismissal of the non-diverse defendants and has argued in federal court that the state court dismissal will be reversed.  Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11) ¶ 15(B)(iv).  There is also a second difference between the cases.  As far as I can tell—and to be fair it is a little bit unclear—it does not appear that the diverse defendant in *Hoyt* ascertained or could have ascertained from the initial pleading that all non-diverse defendants were fraudulently joined.  The fraudulent joinder argument in that case appears to have involved questions of fact as opposed to clear questions of law that arose from the initial complaint.  *See generally id.*  That is a long distance from the case at bar.  None of this is to say that the Fifth Circuit judges would have decided *Hoyt* differently if it looked more like our case.  I'm not sure what the Fifth Circuit would have done.  But, in light of the factual differences, and my concerns about the legal (in)applicability of *Hoyt* to the Eighth Circuit, I think it is fair to put *Hoyt* into the category of extremely-well-reasoned-but-ultimately-not-persuasive.

93   Clint Cook's Obj. to Removal and Mot. to Remand (Doc. 11).

94   Ricetec's Mot. to Realign Parties (Doc. 6).

95   Ricetec asked the Court to make Ricetec the Defendant because 28 U.S.C. § 1441 grants only a defendant the right to remove a case to federal court, and Ricetec wanted to protect its right to remove the case to federal court.  Since the Court finds that the removal was improper on other grounds, the Motion to Realign is denied as moot.  Ricetec can ask the state court to realign the parties.

IT IS SO ORDERED this 15th day of December 2020.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE